TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Lee W. Stremba, Esq.
Brett Goodman, Esq.
Telephone: (212) 704-6000

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WATERSCAPE RESORT LLC | ) | Case No. 11-11593 (SMB) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**DEBTOR'S PLAN OF REORGANIZATION**

Debtor and debtor in possession Waterscape Resort LLC proposes the following

plan of reorganization (the "Plan") pursuant to §1121(b) of Chapter 11 of the Bankruptcy Code,

11 U.S.C. §101 et. seq.

**Article I**
**Definitions**

1.1   Meaning.  For the purpose of this Plan, each of the terms set forth herein

shall have the meaning ascribed to them in this Plan and such meaning shall be equally

applicable to the singular and plural forms of the terms defined. All of the definitions and

provisions contained in this Article I are, and shall be, regarded as integral, substantive and

operative provisions of this Plan.

1.2   Other Terms.  A term that is used in this Plan and not defined herein, but

that is defined in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure, shall

1

have the meaning set forth therein. Any reference contained in the Plan to a particular Exhibit, Paragraph or Article shall be deemed to be a reference to an exhibit, paragraph or article of the Plan.

      1.3    <u>Rules of Construction</u>.  The rules of construction set forth in §102 of the Bankruptcy Code shall be applicable to all of the provisions of the Plan. Without in any way limiting the foregoing, as used in the Plan, the words "includes" and "including" are without limitation.

      1.4    <u>Defined Terms.</u>

      "Administrative Claim" shall mean a Claim which is incurred after the Petition Date and prior to the Confirmation Date and Allowed under §§503(b) or 507(a)(2) and (b) of the Bankruptcy Code, all allowances of compensation or reimbursement of expenses to Professional Persons to the extent Allowed by the Court only upon entry of a Final Order under §330 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and any US Trustee Fees.

      "Administrative Claims Bar Date" has the meaning ascribed to it in Section 2.4 of this Plan.

      "Allowed" or "Allowed Amount" shall mean, with respect to a Claim, the amount of a Claim:

      a.    filed with the Court on or before the Bar Date and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Final Order or the Plan;

      b.    which has been scheduled by the Debtor as liquidated and not disputed or contingent in amount and as to which no objection to the amount thereof has been interposed within any applicable period of limitation;

      c.    as to which any objection has been interposed, to the extent such Claim has been determined in favor of the holder of such Claim by a Final Order; or

d.      any Claim specifically identified in this Plan as an Allowed Claim.

"Assumed Executory Contracts" shall mean all executory contracts and leases between the Debtor other than Rejected Executory Contracts.

"Avoidance Actions" shall mean all actions and causes of action pursuant to Sections 544, 547, 548, 549 and 550 of the Bankruptcy Code, including all claims against creditors for alleged fraudulent transfers under state law utilizing Section 544 of the Bankruptcy Code, and all related rights under Section 502(d) of the Bankruptcy Code.

"Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101, et. seq., as amended. References to "Sections" are to the corresponding sections of the Bankruptcy Code.

"Bar Date" shall mean, as the context requires, the following deadlines for the filing of proofs of Claim in this Chapter 11 Case as fixed by Final Order of this Court dated May 4, 2011: (a) with respect to Claim or interests in this Chapter 11 Case that arose at any time prior to the Petition Date, including a claim pursuant to section 503(b)(9) of the Bankruptcy Code, June 10, 2011 at 5:00 p.m. Eastern Time; or (b) with respect to a Claim that arises from the rejection of an executory contract or unexpired lease, the later of June 10, 2011 at 5:00 p.m. Eastern Time or thirty-five (35) days after entry of the applicable order authorizing such rejection; or (c) with respect to Claims of governmental units (as defined in section 101 (27) of the Bankruptcy Code), October 3, 2011 at 5:00 p.m. Eastern Time.

"Business Day" shall mean any day on which commercial banks are open for business in New York, New York.

"Buyer" shall mean 70 West 45th Street Holding LLC.

"Cash" shall mean lawful currency of the United States of America (U.S. dollars), regular check, certified check, bank check or wire transfer from a domestic bank or other cash equivalents.

"Chapter 11 Case" shall mean the Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code, filed on April 4, 2011 in the United States Bankruptcy Court for the Southern District of New York, Case No.11-11593 (SMB).

"Claim" shall have the meaning given to such term in § 101(5) of the Bankruptcy Code, as supplemented by § 102(2) of the Bankruptcy Code.

"Claimant" or "Creditor" shall mean the holder of a Claim.

"Class" shall mean any category of Claims or Interests as specified in Article III of the Plan.

"Confirmation Date" shall mean the date of entry by the Court of the Confirmation Order.

"Confirmation Order" shall mean an order of the Court confirming the Plan in accordance with the Bankruptcy Code.

"Court" shall mean the United States Bankruptcy Court for the Southern District of New York and any appellate or other court that is competent to exercise jurisdiction over any matter or proceeding arising in or relating to the Debtor's Case.

"Debtor" shall mean Waterscape Resort LLC, and from and after the Effective Date shall include the reorganized Waterscape Resort LLC.

"Debtor's Bankruptcy Counsel" shall mean Troutman Sanders LLP, the attorneys retained by the Debtor to represent it in this Case, which retention was approved by order dated May 2, 2011, effective, *nunc pro tunc* as of April 5, 2011.

"Disputed Claim" shall mean a Claim as to which an objection has been timely filed and which objection: (a) is not the subject of a Final Order allowing or disallowing the Claim, and (b) has not been withdrawn.

"Distribution" shall mean Cash that is required under the Plan to be distributed to the holders of Allowed Claims.

"Effective Date" shall mean the later to occur of:  (i) the Sale Closing Date; or (ii) the date the Confirmation Order has become a Final Order.

"Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Case.

"Exclusions to Releases" shall mean gross negligence, willful misconduct, breach of fiduciary duty, ultra vires actions, fraud, acts constituting malpractice, criminal conduct, or unauthorized use of confidential information that causes damages.

"Federal Rules of Bankruptcy Procedure" shall mean the Federal Rules of Bankruptcy Procedure in effect on the date of the Plan.

"Final Distribution Date" shall mean the date of the last payment to holders of Allowed Claims in accordance with the provisions of the Plan, which date shall be no later than the sixtieth (60th) Business Day after the date on which no Claim remains a Disputed Claim, unless such date is extended by a Final Order for cause shown.

"Final Order" shall mean an order, judgment, decree or decision of a court or other dispute resolution forum of competent jurisdiction which has not been reversed, stayed, modified or amended and as to which:  (i) the time to appeal from, or to seek review or rehearing has expired, (ii) no appeal, review, certiorari or rehearing is pending, and (iii) the order,

judgment, decree or decision has become conclusive of all matters adjudicated therein and is in full force and effect.

"Hotel" shall mean condominium units of the Debtor designated Hotel Unit 1, Hotel Unit 2 and Commercial Unit 3 together with their respective undivided interests in the "Common Elements" (as defined in the Hotel Sale Contract).

"Hotel Assets" shall mean the Hotel and related assets, including the Debtor's restaurant space, to be conveyed by the Debtor to Waterscape Resort II pursuant to the Hotel Sale Contract.

"Hotel Sale Contract" shall mean that certain AGREEMENT OF PURCHASE AND SALE OF MEMBERSHIP INTEREST by and between WATERSCAPE RESORT, as Seller and 70 WEST 45TH STREET HOLDING LLC, as Buyer, dated as of April 1, 2011, which contract is to be assumed pursuant to this Plan; and a copy of which contract is annexed to this Plan as **Exhibit A**.

"Interests" or "Equity Interests" shall mean one or more of the membership interests of the Class A, Class B and Class C members of the Debtor as applicable in the context in which the term is used.

"Mechanics Lien Claims" shall mean the Class 3 Claims of contractors, subcontractors or other persons that timely filed and validly perfected mechanics liens against real property of the Debtor.

"Membership Interest" shall mean the one hundred percent (100%) ownership interest of the Debtor in and to the membership interests of Waterscape Resort II which are to be acquired by the Buyer pursuant to the Hotel Sale Contract.

"Minimum Operating Reserve Amount" shall mean the sum of $300,000.

"Net Sale Proceeds" shall mean the proceeds to be paid by the Buyer to the Debtor upon the closing of the Hotel Sale Contract, less the amount of the Brokerage Commissions (as defined in Section 20 of the Hotel Sale Contract) and other usual and customary escrow, title and closing costs (as set forth in section 6(a) of the Hotel Sale Contract).

"Operating Reserve Balance" shall mean at any point in time from and after the Effective Date the aggregate amount of Cash in the Debtor's bank accounts over and above any amount that the Debtor is then required under the Plan to use or hold in reserve for the payment of Allowed Claims or Disputed Claims.

"Petition Date" shall mean April 5, 2011, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

"Plan" shall mean this Plan of Reorganization.

"Police Power Claims" shall mean liabilities arising under (i) the environmental laws of the United States, any municipality, city, county or state and (ii) any criminal laws of the United States, any municipality, city, county or state.

"Pre-Petition US Bank Loan Documents" shall mean that certain (i) Consolidated, Amended and Restated Building Loan Mortgage, Assignment of Rents and Security Agreement, dated as of June 11, 2007, in favor of U.S. Bank, as amended from time to time, (ii) Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment of Rents and Security Agreement, dated as of June 11, 2007, in favor of U.S. Bank, as amended from time to time, and (iii) Assignment of Leases and Rents, dated as of June 11, 2007, in favor of U.S. Bank, as amended from time to time, and such other loan documents as are annexed and made a part of the foregoing or incorporated by reference into the foregoing.

"Pre-Petition USB Loan Documents" shall mean that certain (i) Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment of Rents and Security Agreement, dated as of June 11, 2007, in favor of USB, as amended from time to time, and (ii) Assignment of Leases and Rents, dated as of June 11, 2007, in favor of USB, as amended from time to time, and such other loan documents as are annexed and made a part of the foregoing or incorporated by reference into the foregoing.

"Priority Claim" shall mean any Claim entitled to priority in accordance with §507(a) of the Bankruptcy Code other than an Administrative Claim.

"Professional Fees" shall mean all Claims for fees, costs and expenses of Professional Persons incurred in this Case, which fees, costs, and expenses shall have been awarded by Final Order pursuant to §§330 or 503(b) of the Bankruptcy Code.

"Professional Persons" shall mean all attorneys, accountants, financial consultants and other professional persons retained in this Case by Final Order within the meaning of §§327 or 1103 of the Bankruptcy Code or otherwise.

"Property of the Estate" shall have the meaning given thereto in Section 541 of the Bankruptcy Code.

"Rejected Executory Contracts" shall mean all executory contracts and leases between the Debtor and other parties as to which: (a) on or before the Confirmation Date, the Debtor has filed a motion for permission to reject same; and (b) the Debtor's motion to reject same is ultimately granted by Final Order.

"Released Parties" shall mean the Professional Persons, US Bank and USB, and each of the affiliates, agents, counsel, advisers, consultants, representatives, investment bankers,

other professionals and past, present and future officers, directors, and employees of each of the foregoing.

"Sale Closing Date" shall mean the date on which the Debtor shall close the sale of the Hotel Interests to the Buyer and the Net Sale Proceeds thereof have been paid in Cash to the Secured Lender.

"Schedules" shall mean the Statement of Financial Affairs and Schedule of Assets, Liabilities, executory contracts and unexpired leases filed by the Debtor with the Court pursuant to Bankruptcy Rule 1007, as such Schedules have been or may be amended from time to time.

"Secured Claim" means a Claim against the Debtor that is (i) secured by a lien on property in which the Estate has an interest, which lien is valid, perfected, enforceable, and not subject to avoidance under the Bankruptcy Code or other applicable law or by reason of a Final Order; or (ii) subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"Secured Lender" or "Secured Lenders" within the meaning of §506(a) of the Bankruptcy Code, shall mean either or both of US Bank or USB, as applicable in the context in which the term is used, the Claims of which are secured by substantially all of the Debtor's assets. Upon the full satisfaction of its Secured Lenders' Claim in accordance with the terms of the Plan, US Bank and USB, as applicable, shall cease to be Secured Lenders.

"Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

"USB" shall mean USB Capital Resources, Inc., f/k/a USB Capital Funding Corp.

"US Bank" shall mean U.S. Bank, National Association.

"US Bank Secured Claim" shall mean the Class 1 Secured Lender Claim of US Bank.

"USB Secured Claim" shall mean the Class 2 Secured Lender Claim of USB.

"US Trustee Fees" shall mean any fees, interest or other charges assessed against the Debtor's Estate under 28 U.S.C. §1930 and 31 U.S.C. §3717.

"Waterscape Resort II" shall mean Waterscape Resort II, LLC, the newly formed wholly owned subsidiary of the Debtor, 100% of the Membership Interest of which is to be acquired by the Buyer pursuant to the Hotel Sale Contract.

**Article II**
**Provision for the Treatment of Unclassified Claims**

2.1     <u>Administrative Claims (excluding Claims for Professional Fees and Claims for US Trustee Fees)</u>. Administrative Claims are not impaired. Except as otherwise specifically provided in this Plan, or unless otherwise agreed by the holder of an Allowed Administrative Claim (in which event such other agreement shall govern), the Allowed Amount of each Administrative Claim shall be paid in Cash, on the latest of:  (a) the Effective Date (or as soon as practicable thereafter); (b) the date such claims become Allowed (or as soon as practicable thereafter): and (c) the date on which such Administrative Claim is to be paid under its terms.

2.2     <u>Professional Fees</u>.  Unpaid fees and expenses of Professional Persons earned prior to the Effective Date shall be paid to them by the Debtor in accordance with orders of the Court.  Fees and expenses of the Debtor's Professional Persons earned after the Effective Date shall be paid by the Debtor within twenty (20) days after the issuance of the applicable

invoice unless an objection thereto is made. In such event, the Debtor shall pay as aforesaid any portion of the invoice as to which no objection is made, and with respect to the disputed portion of the invoice the Professional Person may file an application for allowance with the Court and shall be paid in accordance with a Final Order of the Court.

2.3     Statutory Fees. On or before the Effective Date, Administrative Claims for US Trustee Fees will be paid in Cash equal to the amount of such Administrative Claims. All US Trustee Fees payable after the Effective Date will be paid promptly by the Debtor until the Case is converted or dismissed under §1112, or closed pursuant to §350(a), of the Bankruptcy Code.

2.4     Administrative Claims Bar Date. Except to the extent that another Bar Date or order of the Court applies, any request for allowance of an Administrative Claim (other than a Professional Fee Claim or a Claim for US Trustee Fees) incurred on or prior to the Effective Date, must be filed with the Court, and served upon the Debtor at the address listed in Section 9.9 of this Plan, so that it is received no later than thirty (30) days after the Confirmation Date, or such Claim shall be forever barred, and shall not be enforceable against the Debtor, their successors and assigns, or any of their properties or assets.


**Article III**
**Classification of Claims and Interests**

3.1     Classes. A Claim is in a particular class only to the extent that the Claim falls within the description of that Class and is in a different Class to the extent that the remainder of the Claim falls within the description of such different Class. In addition, a Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim. For purposes of this Plan, the designated Classes are:

Class 1 -       US Bank Secured Claim

Class 2 -       USB Secured Claim

Class 3 -       Mechanics Lien Claims

Class 4 -       Priority Claims

Class 5 -       General Unsecured Claims

Class 6 -       Holders of Interests


3.2     <u>Impaired Claims</u>. Class 1 and Class 2 are impaired.  All other classes are unimpaired.

## Article IV
## <u>Treatment of Classes of Claims and Interests</u>

4.1     <u>Class 1 - US Bank Secured Claim (Impaired, Has Agreed to the terms of this Plan)</u>.  The Class 1 Claim of US Bank is an Allowed Secured Claim as of the Petition Date in the amount of $127,632,970.46, consisting of principal in the amount of $126,192,848.63, plus interest at the contract rate in the amount of $49,550.84, plus legal and consulting fees in the amount of $390,570.99, plus an additional $1,000,000 representing partial payment of Exit Fees and Loan Modification Fees payable pursuant to the Pre-Petition US Bank Loan Documents. From and after the Petition Date, the Class 1 Claim shall:  (a) accrue interest at the contract rate, and not at the default rate, specified in the Pre-Petition US Bank Loan Documents, together with US Bank's attorneys' and consulting fees to the extent provided in the Pre-Petition US Bank Loan Documents until such time as the Class 1 Claim has been paid in full; (b) be reduced by the sum of any payments made by the Debtor to the holder of the Class 1 Claim from and after the Petition Date, with any such payments to be applied first to any unpaid interest and legal fees accrued on the Class 1 Claim as aforesaid and then to the principal balance of the Class 1 Claim.

Any other post-petition fees or charges provided for in the Pre-Petition US Bank Loan Documents and arising or accruing from the Petition Date through the Effective Date shall be deemed waived and released.[1]  In full payment and satisfaction of the Class 1 Claim, the holder of the Class 1 Claim shall receive the following treatment:

> a. The holder of the Class 1 Claim shall retain the liens securing the Class 1 Claim on all Property of the estate retained by the Debtor pursuant to the Plan to the full extent of the unpaid amount of the Class 1 Claim.

> b. The Debtor shall pay to the holder of the Class 1 Claim the greater of:  (i) $120,000,000; and (ii) the full Net Proceeds received by the Debtor or Debtor from the Buyer upon the closing of the Hotel Sale Contract, less such amount, if any, required for the Debtor to maintain an Operating Reserve Balance equal to the Minimum Operating Reserve Amount, up to but not to exceed the full amount of the Class 1 Claim.  Any Net Proceeds of the sale remaining upon the full payment of the Class 1 Claim shall be retained by the Debtor and used first to pay any unpaid balance of the Class 2 Claim and then for other purposes consistent with the terms of this Plan.

> c. The $2,000,000 escrow contemplated by the Hotel Sale Contract (for fit-up of the restaurant) shall be held in an account at US Bank and paid to US Bank upon completion of the Debtor's obligations for which said escrow is to be created, up to but not to exceed the full unpaid amount of the Class 1 Claim.  Any balance remaining in said escrow upon the full payment of the Class 1 Claim shall be returned to the Debtor and used first to pay any unpaid balance of the Class 2 Claim and then for other purposes consistent with the terms of this Plan.

> d. Upon such terms and conditions as may be agreed to between the Debtor and US Bank, for a period of up to ninety (90) days after the Effective Date, US Bank will hold $1,500,000 of any proceeds in excess of $120,000,000 paid by the Debtor pursuant to subparagraph 4.1(b) in escrow for the Debtor for the sole purpose of a possible Internal Revenue Code section 1031 like exchange transaction.  The Debtor shall not be permitted to use such funds for such a transaction unless at or before the closing of such

---

[1] US Bank's acceptance of the foregoing limitations upon its Class 1 Claim shall be effective only upon the occurrence of the Effective Date, and shall be null and void if this Plan is withdrawn or if the Confirmation Order is denied by the Court.

transaction, the Debtor pays to the Bank a like amount, plus any accrued interest or other applicable charges, from new financing obtained by the Debtor in connection with the like exchange transaction or from other sources.

e.      The Debtor shall pay to the holder of the Class 1 Claim, on a monthly basis or as otherwise agreed in writing between the Debtor and the holder of the Class 1 Claim, all Cash in the Debtor's operating bank accounts from any source or sources over and above the amount needed by the Debtor to maintain an Operating Reserve Balance equal to the Minimum Operating Reserve Amount, up to but not to exceed the full unpaid amount of the Class 1 Claim.

f.      In the event that the Debtor obtains new financing using any of its assets as collateral for such financing, then contemporaneous with the closing of such new financing, the Debtor shall from the proceeds of such financing pay any remaining balance of the Class 1 Claim then outstanding.

g.      The Debtor shall pay any unpaid balance of the Class 1 Claim within ninety (90) days of the Effective Date.

h.      Until such time as the Class 1 Claim is paid in full, the Debtor shall continue to provide the holder of the Class 1 Claim with financial reports of the types provided by the Debtor during the Chapter 11 Case in accordance with the cash collateral orders entered by the Court, and such other items reasonably requested by US Bank.

i.      Until such time as the Class 1 Claim and the Class 2 Claim have been paid in full, the Debtor shall hold the Operating Reserve Balance in an account with US Bank.

j.      Except to the extent that they are inconsistent with or modified by the terms of this Plan or the Confirmation Order, from and after the Effective Date the terms and conditions of the Pre-Petition US Bank Loan Documents shall be reinstated and shall govern the relationship between the Debtor and the holder of the Class 1 Claim.

4.2     Class 2 - USB Secured Claim (Impaired, Has Agreed to the terms of this Plan). The Class 2 Claim of USB is an Allowed Secured Claim in the amount of $8,427,473.96, consisting of principal in the amount of $8,045,557.04, plus interest at the contract rate in the

amount of $381,906.92. From and after the Petition Date, the Class 2 Claim shall: (a) accrue interest at the contract rate, and not at the default rate, specified in the Pre-Petition USB Loan Documents, together with USB's attorneys' and consulting fees to the extent provided in the Pre-Petition USB Loan Documents until such time as the Class 2 Claim has been paid in full; and (ii) be reduced by the sum of any payments made by the Debtor to the holder of the Class 2 Claim from and after the Petition Date, with any such payments to be applied first to any unpaid interest and legal fees accrued on the Class 2 Claim as aforesaid and then to the principal balance of the Class 2 Claim. Any other post-petition fees or charges provided for in the Pre-Petition USB Loan Documents and arising or accruing from the Petition Date through the Effective Date shall be deemed waived and released.[2] In full payment and satisfaction of the Class 2 Claim, the holder of the Class 2 Claim shall receive the following treatment:

a.      The holder of the Class 2 Claim shall retain the liens securing the Class 2 Claim on all Property of the estate retained by the Debtor pursuant to the Plan to the full extent of the unpaid amount of the Class 2 Claim.

b.      From and after the Debtor's full payment and satisfaction of the Class 1 Claim, as provided above, the Debtor shall pay to the holder of the Class 2 Claim, on a monthly basis or as otherwise agreed in writing between the Debtor and the holder of the Class 2 Claim, all Cash in the Debtor's accounts over and above the amount needed by the Debtor to maintain an Operating Reserve Balance equal to the Minimum Operating Reserve Amount, up to but not to exceed the full unpaid amount of the Class 2 Claim.

c.      In the event that the Debtor obtains new financing using any of its assets as collateral for such financing, then contemporaneous with the closing of such new financing, the Debtor shall from the proceeds of such financing pay any remaining balance of the Class 2 Claim then outstanding.

---

[2] USB's acceptance of the foregoing limitations upon its Class 2 Claim shall be effective only upon the occurrence of the Effective Date, and shall be null and void if this Plan is withdrawn or if the Confirmation Order is denied by the Court.

d.     The Debtor shall pay any unpaid balance of the Class 2 Claim within ninety (90) days of the Effective Date.

e.     Until such time as the Class 2 Claim is paid in full, the Debtor shall continue to provide the holder of the Class 2 Claim with financial reports of the types provided by the Debtor during the Chapter 11 Case in accordance with the cash collateral orders entered by the Court, and such other items reasonably requested by USB.

f.     Except to the extent that they are inconsistent with or modified by the terms of this Plan or the Confirmation Order, from and after the Effective Date the terms and conditions of the Pre-Petition USB Loan Documents shall be reinstated and shall govern the relationship between the Debtor and the holder of the Class 2 Claim.

4.3     <u>Class 3 - Mechanics Lien Claims (Not Impaired, Not Entitled to Vote)</u>.

The Class 3 Mechanics Lien Claims shall receive the following treatment:

a.     Each holder of a Class 3 Claim shall retain its lien securing said Class 3 Claim on all Property of the Estate retained by the Debtor pursuant to this Plan against which such lien was timely filed and validly perfected on the Petition Date to the full extent of the unpaid amount of the Class 3 Claim.

b.     Either prior to or following the Effective Date, the Allowed Amount, if any, of each alleged Class 3 Claim shall be determined by settlement or Final Order in the ordinary course in a court or other dispute resolution forum of competent jurisdiction pursuant to applicable non-bankruptcy laws and procedures. Each alleged Class 3 Claim shall be deemed a Disputed Claim until the Allowed Amount of such Claim is determined as aforesaid.

c.     From and after the Effective Date, upon the Allowance of a Class 3 Claim, said Class 3 Claim shall be paid in full by the Debtor in the ordinary course of the Debtor's business within sixty (60) days after said Class 3 Claim becomes an Allowed Claim.

d.     Nothing in this Plan shall preclude or prevent the Debtor from bonding or otherwise securing or protecting a Disputed Class 3 Claim at any time and in any matter permitted under applicable non-bankruptcy laws and procedures as may be necessary or proper to enable the Debtor to close sales of condominium units.

4.4 <u>Class 4 - Priority Claims (Not impaired, Not Entitled to Vote)</u>. Each Class 4 Claim shall be satisfied, settled and discharged, in full, by the payment of 100% of such Priority Claim in full, in Cash upon the later of: (i) the Effective Date (or as soon as practicable thereafter); or (ii) the date such Priority Claim becomes Allowed (or as soon as practicable thereafter), or upon such other terms as may be agreed upon between the Debtor and the respective Claimant entitled to such payment.

4.5 <u>Class 5 - Unsecured Claims (Not impaired, Not Entitled to Vote)</u>. Each Class 5 Claim shall be satisfied, settled and discharged, in full, by the payment of 100% of the Allowed Amount of each Unsecured Claim in full, in Cash promptly upon the later of: (i) the Effective Date (or as soon as practicable thereafter); or (ii) the date such Unsecured Claim becomes Allowed (or as soon as practicable thereafter), or upon such other payment terms as may be applicable to such Unsecured Claim by prior agreement between the Debtor and the respective Claimant entitled to such payment or as may hereafter be agreed upon between the Debtor and the respective Claimant entitled to such payment. Interest at a rate to be set forth in the Confirmation Order shall accrue and be payable upon the Allowed Amount of a Class 5 Claim from the date that payment of such Class 5 Claim becomes due to the date that said Class 5 Claim is paid in full by the Debtor.

4.6 <u>Interests (Not impaired, Not Entitled to Vote)</u>. The holders of Class 6 Interests shall retain such Interests. The Class 6 Interests are not impaired, and in addition, the holders of the Class 6 Interests have agreed in writing to the terms of this Plan.

**Article V**
**Means for Implementation of the Plan**

5.1 <u>Sources of Funding for this Plan</u>. The Debtor will fund its payment obligations under the Plan with: (a) the Net Sale Proceeds from the Debtor's sale of its Hotel

Assets pursuant to the Hotel Sale Contract; (b) revenues from rentals and sales of residential apartment units; (c) if the Debtor's restaurant is completed and in operation prior to the closing of the Hotel Sale Contract, any revenues derived from the Debtor's restaurant business; and (d) third-party institutional financing to be procured by the Debtor as necessary to supplement its operating revenues.

        5.2    <u>The Hotel Sale Contract</u>. Under the Hotel Sale Contract, the Debtor will sell its Hotel Assets, including its restaurant space, for the sum of $126,000,000 (plus the payment of approximately $2,000,000 relating to certain mortgage tax savings that the Buyer would realize on the transaction). Pursuant to the Hotel Sale Contract and the Plan, at the closing of the Hotel Sale Contract, the transfer of the Debtor's hotel assets will be made in two virtually simultaneous steps: (a) the Debtor will contribute its hotel assets, and assume and assign certain executory contracts relating to the Debtor's hotel business, to Waterscape Resort II, a newly formed limited liability company and wholly owned subsidiary of the Debtor; and (b) the Buyer will acquire one hundred percent (100%) of the Membership Interest in Waterscape Resort II.

        5.3    <u>Vesting of Debtor's Estate</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, as of the Effective Date: (i) the Debtor shall continue to exist as a separate legal entity with all the powers of a limited liability company under applicable law; and (ii) pursuant to Section 1141(b) of the Bankruptcy Code, all remaining Property of the Estate, wherever situated, shall vest in the Debtor free and clear of all Claims and interests of creditors and equity security holders in the Debtor. Notwithstanding any other provision of the Plan, no entity shall have any right or authority to assert or prosecute any claims, causes of action or rights specifically released pursuant to the terms of the Plan or the Confirmation Order.

5.4    Waiver of Avoidance Actions.    All Avoidance Actions are expressly waived, as well as all related rights under 11 U.S.C. §502(d).

5.5    Objections to Claims.

a.    Unsecured Claims.  The Debtor shall have the exclusive right, for ninety (90) days following the Effective Date or during such additional time requested for cause shown and authorized by Final Order, to object to any and all Unsecured Claims and to litigate, settle or withdraw any objection to Unsecured Claims that are Disputed Claims.  Unless otherwise ordered by the Court, or agreed to by written stipulation approved by a Final Order, or until the objection thereto is withdrawn or contested matter or adversary proceeding dismissed, the Debtor may litigate the merits of each Disputed Unsecured Claim until determined by Final Order.   Any  Unsecured  Claim  for  which  no  objection  or  contested  matter  or  adversary proceeding addressed on or before ninety (90) days after the Effective Date, or such later date as may be fixed by the Court for cause, shall be deemed an Allowed Unsecured Claim in such amount as (i) is set forth in a proof of claim filed with the Court, or (ii) if no proof of claim is filed, as listed in the Schedules filed by the Debtor with the Court pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and not identified as disputed, contingent or unliquidated as to amount.

b.    Priority Claims. The Debtor shall have the exclusive right, for ninety (90) days following the Effective Date or during such additional time requested for cause shown and authorized by Final Order, to object to any and all Priority Claims and to litigate, settle or withdraw any objection to Priority Claims that are Disputed Claims. Unless otherwise ordered by the Court, or agreed to by written stipulation approved by a Final Order, or until the objection thereto is withdrawn or contested matter or adversary proceeding dismissed, The

Debtor may litigate the merits of each Disputed Priority Claim until determined by Final Order. Any Priority Claim for which no objection or contested matter or adversary proceeding addressed to a Priority Claim has been filed on or before ninety (90) days after the Effective Date, or such later date as may be fixed by the Court for cause, shall be deemed an Allowed Priority Claim in such amount as (i) is set forth in a proof of claim filed with the Court, or (ii) if no proof of claim is filed, as listed in the Schedules filed by the Debtor with the Court pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and not identified as disputed, contingent or unliquidated as to amount.

        c.    <u>Mechanics Lien Claims</u>. Either prior to or following the Effective Date, the Allowed Amount, if any, of each alleged Class 3 Claim shall be determined by settlement or Final Order in the ordinary course in a state or local court or other forum of competent jurisdiction pursuant to applicable non-bankruptcy laws and procedures in accordance with Section 4.3 of this Plan. Each alleged Class 3 Claim shall be deemed a Disputed Claim until the Allowed Amount of such Claim is determined as aforesaid.

        d.    <u>Debtor's Authority to Settle Claims</u>. Following the Effective Date, the Debtor shall have the sole and exclusive authority to settle the Allowed Amount of any Disputed Claim against the Debtor, and any such settlement shall not require the approval of the Court.

        5.6    <u>Distributions.</u> The Debtor shall make Distributions to holders of Allowed Claims only in accordance with the Plan. The Distributions and other treatment afforded holders of Claims and Interests under the Plan shall be the only payments and other treatment to be received by the holders of Claims against and Interests in the Debtor.

5.7     Mailing of Distributions. Distributions shall be made by check and shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid, to the holders of Claims at the address listed on their respective proofs of Claim filed with the Court, or if no proof of Claim was filed, the latest mailing address filed by the holder of an Allowed Claim entitled to a Distribution, or if no such mailing address has been filed, the mailing address reflected on the Debtor's Schedules heretofore filed herein, whichever is most recent.  Notwithstanding the foregoing, in the Debtor's sole and absolute discretion, the Debtor may make a Distribution by wire transfer, and/or may deliver a Distribution to an address other than as provided above, if so requested in writing by the Claimant or the Claimant's counsel.

5.8     Set-offs. The Debtor may, but shall not be required to, set-off any Claim of any nature whatsoever the Debtor may have, against the Distribution to be made a Claimant under the Plan.

5.9     Saturday, Sunday or Legal Holiday. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

5.10    Fractional Cents. Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded down to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding down of such fractions, such Cash shall be retained by the Debtor.

5.11    Unclaimed Distributions. Unclaimed Distributions (including Distributions made by checks which fail to be negotiated) shall be retained by the Debtor and

held in trust for the beneficial holders of Allowed Claims entitled thereto for a period of ninety (90) days after the date said Distribution is made. Any Distribution remaining unclaimed ninety (90) days after the Distribution date shall be canceled (by a stop payment order or otherwise) and the Unsecured Claim related to such unclaimed Distribution shall be deemed waived and expunged as a Claim.

## Article VI
## Executory Contracts and Unexpired Leases

6.1     Executory Contracts.   All executory contracts and leases between the Debtor and other parties, including but not limited to the Hotel Sale Contract, shall be deemed assumed by the Debtor upon the Effective Date, except those executory contracts as to which: (a) on or before the Confirmation Date, the Debtor has filed a motion for permission to reject same; and (b) the Debtor's motion to reject same is ultimately granted by Final Order.

6.2     Cure Claims.   Claims for the cure of defaults of the Debtor under executory contracts assumed pursuant to this Plan shall be included in Class 5 Unsecured Claims.

6.3     Rejection Claims.   Claims for rejection damages, if any, with respect to a Rejected Executory Contract, shall be included in Class 5 Unsecured Claims.

## Article VII
## Injunction, Releases and Exculpation

7.1     Effect of Confirmation.   Except as otherwise provided in this Plan, the Confirmation Order (and any subsequent Final Orders) shall be a final determination of the rights of all Claimants and Interest holders to participate in the Distributions under the Plan, whether or not (a) a proof of claim is filed or deemed filed under §501 of the Bankruptcy Code, (b) such Claim is an Allowed Claim, or (c) the holder of such Claim has accepted the Plan.  **Except (i) with respect to the Exclusions to Releases and (ii) as otherwise expressly provided in the**

Plan, the Confirmation Order shall operate as an injunction against the commencement or continuation of any action or the employment of any process to collect, offset or recover any sums against the Released Parties and Debtor with respect to

a. any Claim, or interest thereon, whether or not a proof of Claim is filed or deemed filed under §501 of the Bankruptcy Code, such Claim or interest becomes an Allowed Amount under §502 of the Bankruptcy Code or the holder of such Claim has accepted the Plan, and whether or not such Claim is reduced to judgment, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arises or may arise from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, and

b. any liability of a kind specified in §§502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or deemed filed under §501 of the Bankruptcy Code, such Claim becomes an Allowed Amount under §502 of the Bankruptcy Code, or the holder of such Claim has accepted the Plan.

c. Nothing contained in the releases granted under the Plan shall release any party from the Exclusions to Releases, including any attorney from his or her obligations pursuant to Disciplinary Rule 6-102 of the New York Lawyer's Code of Professional Responsibility.

7.2 **General Injunction.** Exclusive of any applications or appeals pending as of the Confirmation Date, all holders of Claims against or Interests in the Debtor shall forever be enjoined from the commencement or continuation in any manner, of any action or other proceeding of any kind, the employment of process, or other act to assert a Claim for relief against the Released Parties or the Debtor, in respect of:

a. Any actions taken during the course of the Debtor's Case;

b. The Plan;

c.  **The authorization for or the formulation, negotiation, confirmation or consummation of the Plan;**

d.  **Distributions, payments or transfers made under and in accordance with the provisions of the Plan;**

e.  **Any other matter, claim, cause of action, right or liability released pursuant to the Plan including paragraph 7.6 below; or**

f.  **Acts performed pursuant to the Plan.**

7.3     <u>Injunction Against Recording and Taxing Authorities</u>. As of the Effective Date, any and all federal, state and local taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect any transfer taxes from the Debtor to the fullest extent permitted under § 1146(a) of the Bankruptcy Code, and the Confirmation Order shall so provide.

7.4     <u>Reliance by Professional Persons</u>.  The Professional Persons shall incur no liability whatsoever for any action taken, or failure to act, except for the Exclusions to Releases.

a.  In the performance of their duties under this Plan, they shall be entitled to rely upon any document, instrument or signature reasonably believed to be genuine.

b.  They may assume that any party purporting to give any notice in writing has been duly authorized to do so.

7.5     <u>Termination of the Automatic Stay</u>.  The automatic stay pursuant to §362 of the Bankruptcy Code shall continue in effect until the Effective Date and shall thereupon terminate.

7.6     **<u>Limitation of Liability</u>. Except as expressly set forth in this Plan or in the Confirmation Order and without limiting the scope or effectiveness of the releases granted in the Plan, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, neither the Debtor nor any of the Released Parties shall have or incur**

any liability for any actions taken or omitted to be taken before the Petition Date under or in connection with, related to, affecting or arising out of their dealings with the Debtor, any of the Debtor's operations, the filing of the Case, the Case, the administration of the Debtor's Cash, assets, real and personal property, the negotiation, implementation, pursuit of confirmation of the Plan, the consummation and administration of the Plan, the sale or refinancing of the Debtor's Assets, including the Real Property, except for such acts identified in the Exclusions to Releases, and in all respects, the Released Parties shall be entitled to rely upon the advice of counsel with respect to his, her or its duties and responsibilities under the Plan. The Plan shall constitute a release among the Creditors and the Released Parties by all past, present or future holders of Claims or Interests, directly or indirectly, to effect the foregoing, effective as of the Confirmation Date, but subject to the occurrence of the Final Distribution Date, and the Confirmation Order shall so provide.

   7.7 **Limitations of Injunctions and Releases.** Notwithstanding anything to the contrary contained in this Article VII or in the Plan, none of the injunctions and releases provided for in the Plan shall limit, adversely affect or otherwise impair the right of:

    a. **governmental authorities to assert Police Power Claims, as appropriate, against any entity; or**

    b. **the United States Government or any of its agencies to assert any claim against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, the environmental laws, or the criminal laws of the United States, nor shall anything in the Confirmation Order or Plan limit, impair, or in any way affect the application of any laws or regulations of the United States.**

   7.8 **No Effect Upon Guaranties**. Notwithstanding anything to the contrary in this Plan, neither the Plan nor the entry of the Confirmation Order nor the occurrence of the

Effective Date shall have any effect upon the validity or enforceability of any guarantees delivered to US Bank or USB in connection with the closings of the loan transactions that gave rise to the Class 1 Claim and the Class 2 Claim.

## Article VIII

### Conditions Precedent to Confirmation and the Effective Date

8.1     Conditions Precedent to Confirmation.  Confirmation of this Plan shall not occur unless each of the following conditions has occurred or has been waived in a writing executed by the Debtor, the  holders of the Class 1 Claim and the Class 2 Claim, and the Buyer:

a.     the Court shall have entered the Disclosure Statement Order, and such Order shall not have been reversed, stayed, amended, or modified in any manner adverse to the Debtor, the holders of the Class 1 Claim and Class 2 Claim and the Buyer;

b.     the Clerk of the Court shall have entered the Confirmation Order; and

c.     the Confirmation Order shall be, in form and substance, acceptable to the Debtor, the holders of the Class 1 Claim and the Class 2 Claim and the Buyer.

8.2     Conditions to the Effective Date.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur, and the Plan shall not be binding on any Person, unless and until each of the following conditions has occurred or been waived in a writing executed by the Debtor, the holders of the Class 1 Claim and the Class 2 Claim and the Buyer:

a.     The Confirmation Order, in form and substance acceptable to the Debtor, the holders of the Class 1 Claim and Class 2 Claim and the Buyer, shall: (i) have been entered by the Clerk of the Bankruptcy Court on or before July 10, 2011 and shall have become a Final Order on or before July 24, 2011; and  (ii) not

have been reversed, stayed, amended or modified in any manner adverse to the Debtor, the holders of the Class 1 Claim and Class 2 Claim or the Buyer; and

        b.      The Sale Closing Date shall have occurred.

## Article IX
## Miscellaneous Provisions

9.1 <u>Entire Agreement</u>. The Plan and the Confirmation Order, including any exhibits annexed thereto, set forth the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the Plan other than as are expressly provided for herein. Should any non-material provision in the Plan be determined to be unenforceable by a court of competent jurisdiction, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan. <u>For purposes of the foregoing sentence, the material provisions of the Hotel Sale Contract, including without limitation the Stalking Horse Protections granted to the Buyer therein, shall be deemed material provisions of this Plan and the Confirmation Order.</u> The duties, rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, inure to the benefit of and shall be the responsibility of, the successors and assigns of such person or entity.

9.2 <u>Headings</u>. The headings of the Articles, paragraphs and sections of the Plan are inserted for convenience only and shall not affect the interpretation thereof. The Plan, including any exhibits and other attachments hereto, shall constitute the entire Plan, subject to amendment or modification solely as provided herein. Article I of the Plan is and shall be regarded as an integral, substantive and operative part of the Plan.

9.3     Post-Consummation Effectiveness of Evidence of Claims. Evidence of Claims, upon the Effective Date, represent only the right to participate in the Distributions contemplated by the Plan and otherwise shall have no further force or effect.

9.4     Modification of the Plan. The Debtor may amend or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver or file with the Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

9.5     Payment of Statutory Fees. The Debtor shall promptly pay all US Trustee Fees accruing until a Final Decree is entered in this Case, or the Court otherwise orders. Debtor's Bankruptcy Counsel shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid up to and including the Effective Date. The Debtor or its counsel shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid after the Effective Date.

9.6     Defenses with Respect to Claims. Except as otherwise provided in the Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor or the holder of a Disputed Claim with respect to any and all Claims, including but not limited to, all rights in respect of legal and equitable defenses to setoffs or recoupments against Claims.

9.7     Failure of Court to Exercise Jurisdiction. If the Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of this Case, including any of the matters set forth in the Plan, the Plan shall

not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

9.8 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or any other federal law is applicable or to the extent the law of a different jurisdiction is validly elected by the Debtor, the rights, duties and obligations arising under the Plan shall be governed in accordance with the substantive laws of the United States of America and, to the extent federal law is not applicable, the laws of the State of New York.

9.9 <u>Notice</u>. Any notice described in or required by the terms of the Plan shall be deemed to have been properly given (a) if mailed, five (5) days after the date of mailing, or (b) if sent via facsimile, on the date of the transmission confirmation, to

> The Debtor
> c/o its Attorneys
> Troutman Sanders LLP
> 405 Lexington Avenue
> New York, New York 10174
> Attn:  Lee W. Stremba, Esq.
>
> The Secured Lenders
> c/o their Attorneys
> Seyfarth Shaw LLP
> 620 Eighth Avenue
> New York, New York 10018-1405
> Attn: Greg Yates, Esq.
>
> The Buyer
> c/o its attorneys
> Paul, Hastings, Janofsky & Walker LLP
> 75 East 55th Street
> New York, NY 10022-3205
> Attn: Harvey A. Strickon, Esq.

or to such other address as the recipient may give written notice of in accordance with the provisions of this paragraph of the Plan.

9.10    Substantial Consummation. The Plan will be deemed substantially consummated, as such term is used in §1101(2) of the Bankruptcy Code, upon the commencement of Distributions to the holders of any class of Claims under the Plan.

9.11    Continuation of Prior Orders. Entry of a Confirmation Order shall not supersede or affect any prior Orders entered by the Court.

9.12    Reservation of Rights. In the event that the Plan is not confirmed or the Effective Date does not occur, the rights of all parties in interest in the Case shall be reserved in full.

## Article X
## Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date, substantial consummation, or the closing of the Case, the Court shall retain and have jurisdiction of this proceeding under the provisions of the Bankruptcy Code, including, without limitation, §1142(b) thereof and of the Federal Rules of Bankruptcy Procedure, and all matters arising out of, and related to the Case and the Plan, and to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain and have jurisdiction for the following purposes:

a.    To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code and/or any modification of the Plan after substantial consummation thereof,

b.    To hear and to determine:

(i)    all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan,

(ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claims or Interests and the Debtor,

        (iii)     all claims and causes of action which may exist on behalf of the Debtor,

        (iv)     applications for allowance of compensation and objections to Claims which have been or may be timely asserted in accordance with orders of the Court or the Plan,

        (v)     any and all pending applications, adversary proceedings, litigated matters and contested matters, and

        (vi)     matters concerning state, local and federal taxes in accordance with §§345, 505 and 1146 of the Bankruptcy Code.

c.     To ensure that Distributions are accomplished as provided herein, and to resolve any dispute or issue concerning Distributions,

d.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan,

e.     To interpret and enforce orders previously entered in the Case to the extent such orders are not superseded or inconsistent with the Plan,

f.     To hear, determine and resolve any actions or controversies by or against the Debtor or the conduct, action, inaction or omission of the Debtor or its counsel after the Effective Date, and

g.     To perform any other functions set forth in the Confirmation Order.

Dated: New York, New York
       May 6, 2011

               WATERSCAPE RESORT LLC

               By     */s/ Salim Assa*
                    Salim Assa, Manager