UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                    :
                                                          :
WATERSCAPE RESORT LLC,                                    :    Chapter 11
                                                          :    Case No. 11-11593(SMB)
                            Debtor.                       :
---------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## REGARDING MOTION TO APPROVE SETTLEMENTS

**A P P E A R A N C E S:**

TROUTMAN SANDERS LLP
Attorneys for the Reorganized Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

    Lee Stremba, Esq.
        Of Counsel

BARTON LLP
Attorneys for Pavarini McGovern
420 Lexington Avenue
New York, NY 10170

    Eric W. Sleeper, Esq.
        Of Counsel

LITMAN, ASCHE & GIOIELLA, LLP
Attorneys for Atlantic Hoisting and Scaffolding, LLC
140 Broadway – 38th Floor
New York, NY 10005

    Russell M. Gioiella, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       The debtor Waterscape Resort LLC ("Waterscape") seeks the approval of its settlements

with three mechanics lienors, Parkview Plumbing & Heating Inc. ("Parkview"), Concrete

Industries One Corp. ("Concrete") and Atlantic Hoisting and Scaffolding, LLC ("Atlantic"). The mechanics lienors were hired by Waterscape's general contractor, Pavarini McGovern, LLC ("Pavarini"), to work on a project owned by Waterscape. Pavarini objects to the settlement. For the reasons that follow, Pavarini's objections are overruled except to the extent that the Court will conduct an evidentiary hearing to determine the reasonableness of the settlements.

## BACKGROUND

The background to this bankruptcy and the issues involving Waterscape, Pavarini and Pavarini's subcontractors are discussed at length in the Court's prior decision. *See Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 483 B.R. 601 (Bankr. S.D.N.Y. 2012). I assume familiarity with that decision, and highlight the facts relevant to the current dispute.

Waterscape, as owner, constructed a building in Manhattan (the "Property"). It hired Pavarini to act as the general contractor, and Pavarini hired subcontractors, including Atlantic, Concrete and Parkview, to do the actual work. Disputes arose and Waterscape fired Pavarini when the job was essentially complete. Pavarini claimed that Waterscape still owed it substantial sums. Because Pavarini, not Waterscape, was in contractual privity with the subcontractors and obligated to pay them for their work, the majority of Pavarini's claim against Waterscape was based on the amounts Pavarini owed the subcontractors.

Pavarini filed a mechanics lien on December 17, 2010 in the amount of $10,674,440.59, (*see Claim No. 38-1*, dated June 8, 2011, at Ex. C), but now claims that Waterscape owes $10,833,132.59, plus interest. (*Id.*) Pavarini's claim consists of two components: (a) $8,581,289 that it owes its subcontractors, (*Claim no. 38-3*, dated July 22, 2011, at 5; *Response to Demand*

2

*for Verified Statement from Trustee Pursuant to Lien Law § 76 – 45th St. Hotel Project*, dated Feb. 1, 2011 ("*Verified Statement*"),[1] and (b) $2,251,783.59 that Pavarini contends Waterscape owes it under their contract. (*See Claim no. 38-3*, dated July 22, 2011, at 5.) The subcontractors also filed mechanics liens against the Property for their unpaid work, and these liens, for the most part, duplicated the portion of the Pavarini mechanics lien that included their unpaid claims.

In addition to its rights as a mechanics lienor, Pavarini also had rights against Waterscape as a trust fund beneficiary under Article 3-A of the New York Lien Law. Although the rights differed, both were designed to enable Pavarini to recover the amounts Waterscape owed under their contract. In this sense, they represented overlapping remedies for the same injury. The subcontractors had direct rights against Pavarini as trust fund beneficiaries; their rights against Waterscape to trust funds were derivative of Pavarini's rights.

**A.    The Bankruptcy Case**

Waterscape filed this chapter 11 case on April 5, 2011. Pavarini filed a proof of secured claim in the amount of $10,833,132.59, (*Claim no. 38-1*), and most if not all of the subcontractors also filed proofs of claim based on their mechanics liens. Because Pavarini's mechanics lien incorporated the amounts owed to the subcontractors, and the subcontractors asserted the same unpaid claims in their own mechanics liens, the total mechanics liens of record were approximately twice the amount of what was actually needed to satisfy all of Pavarini's and the subcontractors' claims.

---

[1]    The *Verified Statement* is annexed as Exhibit E to each of Waterscape's motions to approve the three settlements. (*See* ECF Doc. ## 399-401.)

3

Waterscape confirmed its *Second Amended Plan of Reorganization* (the "*Plan*") on July 21, 2011. The *Plan* represented the product of substantial negotiation and comment from Pavarini and U.S. Bank, Waterscape's secured lender, and the involvement of the Court. The *Plan* placed the mechanics lien and trust fund claims of Pavarini and the subcontractors in Class 3, and established an $11 million trust fund (the "Trust Fund") to secure the payment of the Class 3 claims although payment was not limited to the amount in the Trust Fund. The amount of $11 million was selected because it represented a rounding up of Pavarini's claim, and was deemed sufficient to satisfy all of the trust fund and mechanics liens claims in Class 3. The funding of the Trust Fund resulted in the release and discharge of Pavarini's mechanics lien, but did not affect the mechanics liens filed by the subcontractors. (*Plan* at § 5.3.)

All Class 3 claims were deemed to be disputed, (*Id.* at § 4.3), and the Class 3 claimants would continue to litigate their rights primarily in non-bankruptcy *fora*. (*Id.* at § 5.6(c).) Once the amount of a Class 3 claim was determined and allowed by settlement or otherwise, Waterscape was required to pay the allowed Class 3 claim from either the Trust Fund, the Secured Claim Reserved Account also established under the *Plan*, new financing or general funds. (*Id.* at § 4.3(c).) After all disputed Class 3 claims were resolved and paid in full, "any funds remaining in the Trust Fund Reserve Account shall be transferred by the Debtor to the Secured Claims Reserve Account and administered in accordance with section 5.2(a) and section 6.4 of this Plan." (*Id.* at § 5.3.) The *Plan* also vested Waterscape with the authority to settle Class 3 claims subject to the notice and hearing required under Bankruptcy Rule 9019:

> *Debtor's Authority to Settle Claims.* With respect to Class 3 Claims or Trust Claims (as defined in section 5.3 of this Plan), the Debtor shall seek approval of settlements of the Allowed Amount of such Claims by motion, on notice to all interested parties, to the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure . . . .

4

(*Id.* at § 5.6(d).)

**B.    The Settlements**

Waterscape has entered into settlements with Atlantic, Concrete and Parkview, respectively, for $360,000, $40,000 and $225,000.  In each case, the settlement amount is less than the debt Pavarini listed in its *Verified Statement* and included in its mechanics lien and Class 3 claim.  The settlement agreements are attached to the three motions and are substantially similar.  Waterscape will pay the settlement amount from the Trust Fund.  The difference between the settlement amounts and the amounts set forth as owing to the settling parties in the *Verified Statement* (aggregating $272,705 and defined in each settlement as the "Trust Fund Release Amount") will be paid to Waterscape.  The Court's refusal to approve the release of the Trust Fund Release Amount will not, however, affect the settlement.  Upon timely payment of the settlement amount, the settling subcontractor will deliver a satisfaction of its mechanics lien to Waterscape.  Finally, the settlement modifies the base contract price initially expressed in the subcontract as subsequently modified or adjusted, and the payment of the settlement amount will reduce whatever Pavarini owes the subcontractor (and hence, what Waterscape owes Pavarini) by the amount of the settlement.

The three motions are also substantially similar, and each is accompanied by a substantially identical supporting affirmation of Salim Assa ("*Assa Affirmation*"), Waterscape's manager, attached as Exhibit D to each motion.  After briefly reciting the background of the settling subcontractor's claim and the litigation pending in state court regarding the settling subcontractor's allegedly defective work, Mr. Assa opines:

> In light of the extensive proceedings that have been conducted, particularly before the DRB, during which abundant information regarding the merits of the [settling subcontractor's] claim has been shared by the parties, I

5

> believe that there are valid bases to substantially reduce the [settling subcontractor's] claim. I am also aware, however, that the results of litigation are uncertain and in all events the expense of litigating the [settling party's] claim to a conclusion would be substantial. Waterscape, through the undersigned and my in-house counsel Richard Migliaccio, has therefore engaged in extensive arms-length negotiations with [settling subcontractor] to resolve [its] alleged claim at a favorable amount and thereby, indirectly, reduce Pavarini's alleged claim against Waterscape. Those negotiations have successfully resulted in the signing of the Settlement Agreement.

(*Assa Affirmation* at ¶ 9.)

**C.     Pavarini's Objection**

Pavarini objected to the settlements. (*Objection of Pavarini McGovern, LLC to the Debtor's Notice of Presentment of Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Settlement Agreements with Parkview Plumbing & Heating Inc., Concrete Industries One Corp. and Atlantic Hoisting & Scaffolding, LLC*, dated Jan. 10, 2013 ("*Pavarini Objection*") (ECF Doc. # 402).) The objections fall into three categories that sometimes overlap. First, the settlements wrongfully exclude Pavarini as a party despite the fact that it is the only party in privity with the subcontractors. (*Id.* at ¶¶ 1-2.) The settlement of contentious construction litigation is typically global, involving the owner, construction manager and subcontractor who release each other as part of the settlement. (*Id.* at ¶ 3; *see* ¶ 11 & Ex. 1.) Instead, Waterscape and Pavarini will continue their litigation over the same defects before the DRB. If Waterscape prevails before the DRB, Pavarini could seek indemnification from the relevant subcontractor. Consequently, the settlement with the subcontractor does not settle the underlying dispute. (*Id.* at ¶ 10.)

Second, the settlements violate section 5.3 of the *Plan*, amount to a diversion of trust funds under state law and jeopardize the interests of the other Trust Fund claimants. (*Id.* at ¶¶ 5-6, 9.)

Third, Waterscape has failed to demonstrate the reasonableness of the settlements, particularly since there have not been any substantive proceedings in the state court or before the DRB concerning the defects that are the subject of the settlements. (*Id.* at ¶¶ 4, 7-8.)

## DISCUSSION

On a motion to approve a settlement, a bankruptcy court does not decide underlying questions of law or fact. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983). Instead, the court must determine that the settlement does not fall "below the lowest point in the range of reasonableness." *Id.* (internal quotation marks and citation omitted). The decision is based on several factors including the risks and rewards of continued litigation, the possibility of delay, increased costs and difficulty in collection even if the trustee prevails, the interest of the creditors and whether they support the settlement, the competency of counsel that support the settlement and the extent to which the settlement reflects an arms-length bargain. *See Motorola v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

### A.    Exclusion from the Settlement

Pavarini's objection to its exclusion from the settlement lacks merit. While the settlement of construction litigation may typically be global, nothing prohibits Waterscape from entering into a settlement with a subcontractor that does not include Pavarini. The three settling

7

subcontractors filed mechanics liens against *Waterscape's* property, and Waterscape doesn't need Pavarini's permission to discharge those liens.

Furthermore, this recurrent theme in Pavarini's objection was raised and rejected at the confirmation hearing. Responding to Waterscape's draft amended plan, Pavarini insisted on proposed language in section 5.6(d) stating that "the Debtor shall not settle any Class 3 or Trust Claim without the consent of Pavarini McGovern, LLC." (*Declaration of Eric W. Sleeper of Authentication of Modifications to Amended Plan of Reorganization, Amended Disclosure Statement and Order Approving Disclosure Statement and Confirming Plan*, dated July 6, 2011, Ex. A, at 28) (ECF Doc. # 112).) Pavarini's counsel repeated this position at the confirmation hearing. He observed that the draft plan placed the settlement process "within the exclusive and sole authority of the debtor," and argued that Pavarini should be part of any process that involved the settlement of a Class 3 claim. (Transcript of hearing held July 13, 2011, at 26-28) (ECF Doc. # 126).)

Waterscape opposed giving Pavarini a veto over settlements, and the Court resolved the issue by requiring that Waterscape comply with Bankruptcy Rule 9019 when seeking to settle any Class 3 claim. Any party in interest could object on the ground that it was unreasonable, and to that extent—and—only to that extent—did any party in interest, including Pavarini, enjoy veto power over a settlement. (*Id.* at 38-39.) This procedure was incorporated into section 5.6(d) of the *Plan*, and reflected the rejection of Pavarini's position that Waterscape could not settle a Class 3 claim without Pavarini's consent.

Pavarini raised a related issue that it will be prejudiced by the use of the Trust Fund to pay the settlement amounts because the Trust Fund also serves as security for Pavarini's Class 3

8

claim. It appeared to the Court that Pavarini would not suffer any prejudice. Any payment would reduce the subcontractor's claim against Pavarini, Pavarini's Class 3 claim against the estate and the amount needed to pay Pavarini's Class 3 claim by a like amount. If Waterscape used the Trust Fund to pay all of the subcontractors the amounts that Pavarini admitted to owing in the *Verified Statement*, Pavarini would owe nothing more to the subcontractors and there would still be enough money in the Trust Fund to pay the approximate $2.2 million balance of its Class 3 claim.

The Court nevertheless invited supplemental submissions to give Pavarini an additional opportunity to amplify its claim of prejudice. Pavarini explained the prejudice in the following manner using the Parkview settlement as an example:[2]

Pavarini listed its debt to Parkview at $330,936 and allocated this amount to Parkview in preparing its own mechanics lien. Waterscape proposes to pay Parkview $225,000 in full satisfaction of its Class 3 claim. However, Waterscape has asserted a claim against Pavarini before the DRB alleging that Parkview's defective work damaged it in the amount of $429,943. If the DRB finds that Waterscape suffered damages in excess of $105,936 (the difference between Pavarini's lien amount attributable to Parkview and the amount of the Parkview settlement), Parkview's trust claim will not have been fixed at $225,000 and Parkview will have been overpaid. Moreover, Parkview's trust claim cannot be fixed until the portion of Pavarini's trust claim relating to Parkview's work is fixed.

---

[2] *See Supplemental Objection of Pavarini McGovern, LLC to the Debtor's Notice of Presentment of Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Settlement Agreements with Parkview Plumbing & Heating Inc., Concrete Industries One Corp. and Atlantic Hoisting & Scaffolding, LLC*, dated Jan. 28, 2013 (ECF Doc. # 405).

The situation that Pavarini describes would be prejudicial to Waterscape, not Pavarini. Waterscape is the ultimate beneficiary of any funds remaining in the Trust Fund after all Class 3 claims and the Chartis Lien[3] are satisfied. If Waterscape overpays a Class 3 claimant, there will be less left over for Waterscape at the end of the day.

Furthermore, an overpayment will not threaten Pavarini's security. The amount of the Trust Fund was based on what Pavarini claimed it owed to the subcontractors and incorporated into its mechanics lien. Pavarini's security will not be impaired as long as the settlement does not pay more than Pavarini allocated to that subcontractor. For the same reason, it will not jeopardize the interests of the other Class 3 creditors in the Trust Fund.

Finally, Pavarini's invocation of New York Lien Law is foreclosed by the *Plan*. The *Plan* combines the mechanics liens and overlapping state law trust fund beneficiary claims into a single class. The Trust Fund is not limited to the payment of state law trust claims. It may also be used to discharge the subcontractors' mechanics liens claims in Class 3, and hence, permits Waterscape to bypass Pavarini and pay what Pavarini owes to the subcontractors directly notwithstanding New York Lien Law. Any payment will reduce the subcontractor's contract and trust fund claims against Pavarini by the amount of the payment.

**B.    Trust Fund Release Amount**

Pavarini's objection to the payment of the Trust Fund Release Amount to Waterscape is sustained. The *Plan* states that after all of the disputed Class 3 claims are satisfied, any remaining money in the Trust Fund will be transferred to the Secured Claims Reserve Account,

---

[3] Chartis, Waterscape's insurer, filed a partially secured claim arising under the parties' insurance agreements. Under the *Plan*, Waterscape assumed the insurance agreements and granted a lien to Chartis to secure payment of its disputed cure claim. (*See Plan* at § 6.4.)

10

(*Plan* at § 5.3), and the Secured Claims Reserve Account will then be subject only to the Chartis Lien. (*Id.* at § 5.2(a)(ix).) The *Plan* does not say what happens to the balance in the Secured Claims Reserve Account once Chartis' secured claim is satisfied, but the reasonable assumption is that the equity belongs to Waterscape. Accordingly, although Waterscape may be the ultimate beneficiary of excess money in the Trust Fund, it is not entitled to receive any payments from the Trust Fund at this time.

C.    **Reasonableness of the Settlement**

Certain of the Pavarini's objections to the reasonableness of the settlement have merit; others do not. The latter group includes the objection that the settlement is unfair because it does not name Pavarini as a necessary signatory, that there have been no substantive proceedings involving the settling subcontractors' claims before the DRB or in state court, or that the settlements will not resolve all of the disputes relating to the settling subcontractors' defective work. The Court has already addressed Pavarini's argument that it must be a party to the settlement, and Waterscape is free to enter into partial settlements that do not also resolve related disputes with non-settling parties. Furthermore, the absence of substantive proceedings regarding a settling subcontractor's defective work is not a basis to deny a settlement; parties settle disputes to avoid litigation, not require it. Subsequent litigation between Waterscape and Pavarini before the DRB may result in a determination that the settling subcontractor performed defective work and was not entitled to the amount sought in its mechanics lien or paid by Waterscape. Waterscape bears the risk of overpayment and the settling subcontractors bear the risk, if any, that Pavarini will look to them for indemnity based on adverse results before the DRB.

On the other hand, Pavarini is correct that Waterscape has failed to provide enough information that will allow the Court to reach an "informed and independent judgment" that the settlement is reasonable. The *Assa Affirmation* contains identical and largely conclusory recitations of why the settlements are reasonable. In each case, it makes a very brief reference to the allegedly defective work of the settling subcontractor, but does not provide any detail. Accordingly, the Court cannot make its own independent judgment regarding the risks and rewards of continued litigation, and the attendant costs and delay.

A letter to the Court, dated January 30, 2013, from Atlantic's attorney, Russell M. Gioiella, Esq. (ECF Doc. # 408), raised additional questions relating to the reasonableness of that settlement. The letter states that "if the settlement with the Debtor is effectuated, Atlantic will release Pavarini from this claim [$467,144] thereby reducing Pavarini's potential liability to Atlantic to zero." This sounds like the settlement will satisfy Pavarini's liability to Atlantic. If that is Atlantic's intent, it should be stated clearly because it is contrary to the terms of the settlement agreement which provides only for a reduction in the claim against Pavarini equal to the amount of the settlement. Furthermore, any settlement that completely releases Pavarini's liability to Atlantic will provide a greater benefit to the estate because it will reduce Pavarini's Class 3 claim beyond the amount of the settlement.

Atlantic's letter also states that "there has never been any defective work claim relating to Atlantic" by either Waterscape or Pavarini. This statement directly contradicts other evidence presented by Waterscape. According to Mr. Assa:

> The Debtor has disputed the Atlantic Hoisting Claim in the state court proceedings and before the DRB on the ground that Atlantic Hoisting failed to furnish materials, equipment and labor relative to hoist, sidewalk bridge and roof protection installation, maintenance and dismantling on the project in accordance with the Prime Contract and the Subcontract. Atlantic Hoisting has denied

12

> Waterscape's allegations and has claimed that it is not in breach of the Subcontract.

(*Assa Affirmation* at ¶ 8 (ECF Doc. #401).) In addition, the earlier quotation from the *Assa Affirmation* included his statement, "I believe that there are valid bases to substantially reduce [the Atlantic] claim." (*Id.* at ¶ 9.) If these are misstatements, there is no actual dispute regarding Atlantic's work and Atlantic is willing to accept less money to expedite payment, then the settlement is obviously reasonable. This is an additional reason why the disputed nature of Atlantic's work should be clarified.

In conclusion, Pavarini's objections are overruled except to the extent that the Court will conduct an evidentiary hearing to determine the reasonableness of each settlement and clarify the issues raised by Mr. Gioiella's letter. Waterscape should contact chambers to obtain a hearing date.

So ordered.

Dated: New York, New York
February 11, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge