UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                              :
                                                    :
WATERSCAPE RESORT LLC,                              :    Chapter 11
                                                    :    Case No. 11-11593 (SMB)
                          Debtor.                   :
---------------------------------------------------------------X

## MEMORANDUM DECISION DENYING MOTION
## FOR ATTORNEYS' FEES AND EXPENSES

**A P P E A R A N C E S:**

BARTON LLP
*Attorneys for Pavarini McGovern, LLC*
420 Lexington Avenue
New York, NY 10170

    Eric W. Sleeper, Esq.
        Of Counsel

MEDINA LAW FIRM LLC
*Attorneys for Debtor*
405 Lexington Avenue – 7th Floor
New York, NY 10174

    Eric S. Medina, Esq.
        Of Counsel

BLANK ROME LLP
*Attorneys for U.S. Bank National Association and*
  *USB Capital Resources, Inc. f/k/a USB Capital Funding Corp.*
405 Lexington Avenue
New York, NY 10174

    Michael Z. Brownstein, Esq.
    Andrew B. Eckstein, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Pavarini McGovern, LLC ("Pavarini") has moved for the entry of an order allowing the reimbursement of its attorneys' fees and expenses incurred through December 31, 2012 in this case and a related adversary proceeding, in the amounts of $344,253.00 and $5,530.07, respectively, and directing payment from the Trust Fund Reserve Account created under the confirmed plan to satisfy the Class 3 claims.  (*Motion of Pavarini McGovern, LLC for Reimbursement of Attorneys' Fees and Expenses and Directing Payment Thereof*, dated Mar. 7, 2013 ("*Motion*") (ECF Doc. # 429).)  The debtor ("Waterscape") opposes the entire motion and U.S. Bank National Association and USB Capital Resources, Inc. f/k/a USB Capital Funding Corp. (collectively, the "Bank") oppose the motion to the extent it seeks payment from the Trust Fund Reserve Account.  Pavarini's motion is denied for the reasons that follow.

## BACKGROUND

The background facts are described in *Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 483 B.R. 601 (Bankr. S.D.N.Y. 2012) and *In re Waterscape Resort LLC*, No. 11-11593(SMB), 2013 WL 498168 (Bankr. S.D.N.Y. Feb. 11, 2013).  I assume familiarity with those decisions and limit the discussion to the facts necessary to explain this decision.

Waterscape constructed a 45-story hotel and condominium building in Manhattan (the "Project").  Pavarini acted as the general contractor on the Project, and hired subcontractors to do the work.  The Bank financed the Project.

Waterscape and Pavarini eventually had a falling out, and Waterscape terminated its agreement with Pavarini. Pavarini filed a mechanic's lien on December 17, 2010 in the amount of $10,674,440.59, (*Claim No.* 38-1, Ex. C), but claimed in this bankruptcy to be owed $10,833,132.59. Its claim consisted of two components: (a) $8,581,829 that it owed its subcontractors, and (b) $2,251,303.59 that Pavarini contended Waterscape owed it under their contract. (*Id.*, Ex. A.) The subcontractors also filed mechanics' liens against the Property for their unpaid work, and these liens, for the most part, duplicated the portion of Pavarini mechanic's lien that included their unpaid claims.

In addition to its rights as a mechanic's lienor, Pavarini also had rights against Waterscape as a trust beneficiary under Article 3–A of the New York Lien Law. Although its rights as a mechanic's lienor and as a trust beneficiary were separate, the remedies overlapped and redressed the same injury: Waterscape's failure to pay Pavarini the full amount due in connection with the construction of the Project. The subcontractors, in turn, had direct rights against Pavarini as trust beneficiaries; their rights against Waterscape to any trust funds were derivative of Pavarini's rights.

A.   **The Bankruptcy**

Waterscape commenced this chapter 11 case on April 5, 2011. On June 9, 2011, Pavarini filed a proof of secured claim in the amount of $10,833,132.59, and commenced an adversary proceeding (the "Adversary Proceeding") on behalf of itself and the subcontractors the next day. Among other things, the complaint alleged that

3

Waterscape had diverted trust funds by failing to pay over requisitions funded by the Bank and by remitting the proceeds of condominium sales to the Bank. The complaint also named the Bank, but those counts were later dismissed by stipulation.

During the pendency of the chapter 11 case, Waterscape filed a proposed plan. The plan contemplated the sale of the hotel portion of the Project free and clear of liens, claims, interests and encumbrances, and the payment of all of the proceeds to the Bank in partial satisfaction of its secured claims. The original plan also provided that the proceeds of any future condominium sales would be paid to the Bank until its claims were paid in full.

Pavarini objected to several aspects of the proposed plan, but focused on the disposition of the hotel and condominium sale proceeds. It argued that the trust beneficiaries held claims of roughly $10.8 million, the funds generated by the sales of the hotel and condominium units were trust assets, and the trust claims had to be fully satisfied from these proceeds before any proceeds could be distributed to the Bank.

As a result of Pavarini's objections, Waterscape eventually filed the *Second Amended Plan of Reorganization* (the "*Plan*"), which the Court confirmed on July 21, 2011.[1] The *Plan* placed Pavarini and the subcontractors in Class 3, and the Bank and Waterscape agreed to carve $11 million out of the hotel sale proceeds and establish the Trust Fund Reserve Account for the exclusive benefit of Class 3. (*Plan* at § 5.3.) The

---

[1] A copy of the *Plan* is annexed to the *Order Approving Disclosure Statement and Confirming Plan of Reorganization*, dated July 21, 2011 ("*Confirmation Order*") (ECF Doc. # 128).

4

sum of $11 million was selected because it rounded up Pavarini's approximate $10.8 million claim, and was, therefore, considered sufficient to satisfy the allowed amount of the Class 3 claims. All Class 3 claims were deemed to be disputed, (*id.* at § 4.3), and the parties would continue to litigate their rights primarily in non-bankruptcy *fora*. (*Id.* at § 5.6(c).) Once the amount of a Class 3 claim was determined and allowed by settlement or otherwise, Waterscape was required to pay the allowed Class 3 claim from either the Trust Fund Reserve Account, the Secured Claim Reserved Account also established under the *Plan*, new financing or general funds. (*Id.* at § 4.3(c).) After all disputed Class 3 claims were resolved and paid in full, "any funds remaining in the Trust Fund Reserve Account shall be transferred by the Debtor to the Secured Claims Reserve Account and administered in accordance with section 5.2(a) and section 6.4 of this Plan." (*Id.* at § 5.3.) Ultimately, any excess cash would inure to the benefit of Waterscape.

The *Plan* was confirmed on July 21, 2011, only three-and-one-half months after the case was commenced. (*See Confirmation Order*.) The sale of the hotel closed approximately six months later, the *Plan* went effective, and the hotel proceeds funded the $11 million Trust Fund Reserve Account. Since then, the Court has approved the settlement of disputes between Waterscape and five subcontractor/mechanics' lienors, and authorized the payment of $1,635,000 from the Trust Fund Reserve Account.[2] Many more subcontractor disputes remain pending in state court. In addition,

---

[2] The *Plan* vested Waterscape with the authority to settle Class 3 claims under Bankruptcy Rule 9019 subject to notice and hearing and a Court order.

5

substantial disagreements between Waterscape and Pavarini still exist and are pending in an ADR forum pursuant to the parties' contract.

**B.    The *Motion***

The *Motion* seeks Pavarini's legal fees and disbursements incurred in connection with the case and the Adversary Proceeding through December 31, 2012. The request also includes $2,120.00 in fees incurred prior to the filing of the chapter 11 petition. Pavarini does not seek *in personam* relief against Waterscape. Instead, it seeks payment from the Trust Fund Reserve Account relying on the "common fund" doctrine, provisions of the New York Lien Law and federal and state procedural rules that allow a class representative to recover legal fees and expenses. None of the *direct* beneficiaries of the Trust Fund Reserve Account (the Class 3 claimants) have objected to the *Motion*.

Two *indirect* beneficiaries, however, did object. The Bank argued that it is a defendant or may become a defendant in various subcontractor actions pending in state court against Waterscape. It expressed a concern that surcharging the Trust Fund Reserve Account to pay Pavarini's attorneys' fees and expenses would limit the amount available to pay Class 3 claims and expose the Bank to increased liability. It contended that the Trust Fund Reserve Account was created to pay the Project-related claims embodied in Pavarini's proof of claim, and the *Motion* proposed to use it in a manner contrary to the plain language of the *Plan*. To the extent Pavarini was seeking its fees

6

and expenses based on a "substantial contribution" under 11 U.S.C. § 503(b)(3)(D),[3] the application was time-barred. Lastly, if Pavarini was seeking fees based on its status as a class representative in the Adversary Proceeding, the certification of the class and Pavarini as the class representative did not occur until October 12, 2012. Yet the fee request encompassed services dating back to March 2011.

Waterscape, the ultimate owner of any excess funds in the Trust Fund Reserve Account, also objected. It devoted most of its opposition to the contention that Pavarini failed to show that it was entitled to a "substantial contribution" award. It also asserted that Pavarini was not entitled to compensation for work done in the Adversary Proceeding because the prosecution of the class action did not create the Trust Fund Reserve Account or confer any benefit on the class that it had not already received under the *Plan*.

## DISCUSSION

Pavarini is not asserting a claim *against the estate* based on a "substantial contribution," but instead, seeks to recover its fees and expenses *from the Trust Fund Reserve Account* under the "common fund" doctrine.[4] Under the "common fund"

---

[3]    Bankruptcy Code § 503(b)(3)(D) provides, *inter alia*, that a creditor may recover the actual, necessary expenses it incurs as an administrative expense "in making a substantial contribution in a case under chapter . . . 11 of this title."

[4]    The *Plan* required all administrative claims to be filed no later than thirty days after confirmation "or such Claim shall be forever barred, and shall not be enforceable against the Debtor, their successors and assigns, or any of their properties or assets." (*Plan* at § 2.4.) The Plan was confirmed on July 21, 2011, and Pavarini did not file the *Motion* until on or about March 7, 2013. As a "substantial contribution" claim, the *Motion* would be barred under the *Plan*.

7

doctrine, a litigant or lawyer who creates, enhances or restores a common fund for the benefit of himself and others is entitled to recover his reasonable attorneys' fees and expenses from the fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166-67 (1939); *Cent. RR. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 126-27 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532-33 (1881). The doctrine is based on principles of unjust enrichment, and requires the beneficiaries of the fund to bear the cost of its creation. *See Van Gemert*, 444 U.S. at 478; *accord Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The rule is not limited to recoveries through litigation; a party or its attorney may recover when the common fund results from a settlement. *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975).

Pavarini has established its right to recover at least some of its fees and expenses under the "common fund" doctrine. But for its efforts, Waterscape and the Bank never would have agreed to carve out $11 million from the proceeds of the sale of the hotel, and create the Trust Fund Reserve Account under the *Plan* for the benefit of a class consisting of Pavarini and the subcontractors. Pavarini's persistent objections to the original plan and its arguments that the proposed disposition of the hotel sale proceeds and future condominium sale proceeds violated New York's Lien Law and diverted trust funds benefited Pavarini and the subcontractors by creating a fund of readily available cash to pay their allowed claims.

The *Plan*, however, forecloses any recovery. The confirmation of a plan binds all parties to the bankruptcy proceeding, 11 U.S.C. § 1141(a), and constitutes a final

8

judgment on the merits entitled to preclusive effect under the doctrine of *res judicata*. *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 00 Civ. 8688 (WHP), 2004 WL 1119652, at * 2 (S.D.N.Y. May 20, 2004); *see Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997); *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 872-73 (2d Cir. 1991). The Trust Fund Reserve Account was created after substantial discussion among the Court and parties, including Pavarini. It was established to pay the approximate $11 million in trust fund/mechanics' lien claims, and the amount in the fund was based on Pavarini's proof of claim which did not include a claim for attorneys' fees. Nor did Pavarini assert its claim for attorneys' fees and legal expenses during the confirmation proceedings. The confirmation of the *Plan* finally determined the parties' respective rights in the Trust Fund Reserve Account, and Pavarini's failure to assert its claim against the Trust Fund Reserve Account during the confirmation proceeding precludes it from doing so now under the "common fund" doctrine or any other theory.[5]

Even if the confirmed *Plan* did not bar Pavarini's claim, it has failed to carry its burden of proving that it is entitled to recover the amounts it seeks. A trial court may

---

[5] Pavarini also asserts a related claim for attorneys' fees against the fund under the Lien Law. A court may, in the exercise of discretion, award attorneys' fees and expenses payable from a fund to a class representative whose efforts created or preserved it. *Caristo Constr. Corp. v. Diners Fin. Corp.*, 236 N.E.2d 461, 465 (N.Y. 1968); *cf. In re Cable Sys. Corp. S'holders Litig.*, 868 N.Y.S.2d 456, 468 (N.Y. Sup. 2008) (court may award fees to class representative's counsel if the plaintiff conferred a substantial benefit on the class and the lawsuit was the proximate cause of the benefit obtained). The Adversary Proceeding did not create or preserve the Trust Fund Reserve Account although certain services rendered in connection with the Adversary Proceeding may have informed Pavarini's objection to the original plan and fostered the settlement embodied in the *Plan*. The Adversary Proceeding itself has not yet and may never confer a benefit on the class beyond what the Trust Fund Reserve Account already provides.

calculate fees under the "common fund" doctrine using either the lodestar or percentage of fund method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Pavarini has argued for an award under the lodestar method, and acknowledges that the same general principles apply to lodestar compensation outside of bankruptcy and under 11 U.S.C. § 330.

Non-bankruptcy courts applying the lodestar method generally arrive at a fee "by multiplying 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The fee applicant bears the burden of proving the reasonableness and necessity of its services. *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) ("As the fee applicant, plaintiffs 'bear[ ] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'") (internal citation omitted); *Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 62 (E.D.N.Y. 2003) ("The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged.") (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173.

Pavarini apparently seeks an award for all of the fees incurred by Barton LLP ("Barton"), one of its two outside counsel, for every service Barton rendered in the

bankruptcy case and the Adversary Proceeding through December 31, 2012. Barton's time records span at least two hundred pages, and nothing seems to be left out. The records are arranged chronologically starting with March 21, 2011 (two weeks before the Petition Date). The *Motion* does not distinguish between Barton's pre-petition, post-petition/pre-confirmation and post-confirmation services. The *Motion* also does not differentiate between Barton's services in the bankruptcy case and its representation of Pavarini and the class in the Adversary Proceeding.

The reasonableness and necessity for every service rendered by Barton during the approximate twenty-one months covered by its time records is not apparent. The *Plan* was confirmed on July 21, 2011. Its confirmation reflected the culmination of Pavarini's fight to create a common fund—the benefit that underpins its claim made pursuant to the "common fund" doctrine. The Trust Fund Reserve Account was not actually funded until the sale of the hotel six months later, but the funding followed from the *Plan* and Pavarini has not pointed to anything it did during those six months that merits compensation from the fund. *A fortiori*, it has failed to identify the services that merit compensation during the approximate seventeen months after the confirmation of the *Plan*.

Much of the work reflected in Barton's time records was rendered post-confirmation in the Adversary Proceeding. Pavarini points to the fact that it successfully moved for partial summary judgment in the Adversary Proceeding in connection with its claim that Waterscape diverted approximately $14.5 million in trust

11

funds to the Bank. That work, however, did not create or enhance the Trust Fund Reserve Account or another common fund. While the Court determined that a diversion had occurred, it also concluded that Waterscape had restored $11 million of those funds under the *Plan*, and left open the question whether Pavarini and the class it represents are entitled to any further relief beyond that granted under the *Plan*.[6]

Accordingly, the *Motion* is denied. The foregoing is without prejudice to Pavarini's right to seek attorneys' fees and expenses under the "common fund" doctrine or any other principle should Pavarini confer some additional benefit on the class beyond what the *Plan* already provides. Settle order.

Dated:      New York, New York
            May 23, 2013

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge

---

[6] Thus, even if the Court could ignore the *Plan* and award fees payable from the Trust Fund Reserve Account, Pavarini has failed to demonstrate that it is entitled to recover an award for all of the services rendered by Barton in the Adversary Proceeding through the end of 2012.